2021 IL App (1st) 200844-U

FIFTH DIVISION
Order filed: June 11, 2021

No. 1-20-0844

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| MUNIR GULIANA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 L 11358 |
| | ) | |
| NAJIB KANDU and NAJLA SHAMOUN, | ) | Honorable |
| | ) | Patrick J. Sherlock, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Delort and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We reverse the circuit court's dismissal of the plaintiff's complaint, finding that his claims were not barred by the statute of limitations because the defendant made a new promise to pay the debt he owed to the plaintiff.

¶ 2    The plaintiff, Munir Guliana, appeals from orders of the circuit court of Cook County, dismissing his complaint against the defendants, Najib Kandu and Najla Shamoun, pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619) (West 2018) and denying

his motion for reconsideration. On appeal, he argues that the circuit court erred when it determined that his complaint was barred by the statute of limitations. For the reasons that follow, we reverse.

¶ 3    The following factual recitation is derived from the pleadings and orders of record.

¶ 4    On October 11, 2019, the plaintiff filed a three-count complaint against the defendants, asserting claims for breach of contract, fraud, and debt. The complaint alleges the following facts. Beginning in 2003, the plaintiff and his brother, Najib Yusif, loaned Kandu money to purchase real estate on their behalf.[1] Between 2003 and 2005, the plaintiff loaned Kandu $330,000. However, rather than purchasing property on behalf of the plaintiff and his brother, the defendants' "actual intent" was to transfer ownership of the properties to themselves (or cooperating third parties), obtain bank loans secured by the properties, keep the proceeds of the loans without making payments, and then allow the properties to fall into foreclosure. The plaintiff sought an award of damages in excess of $330,000, an accounting of funds obtained by the defendants, a constructive trust, punitive damages, and attorney fees and costs.

¶ 5    The plaintiff attached several exhibits to his complaint, including copies of alleged notes Kandu executed in favor of the plaintiff. The first note is dated November 10, 2003, and in the amount of $30,000, including $29,000 in principal plus $1000 in interest. The note states that the plaintiff "must be able to cash the ck. [*sic*] on Monday, Dec. 15, 2003." The note appears to be signed by both Kandu and the plaintiff. The second note is dated May 11, 2004, and in the amount of $200,000. The note states that Kandu will make monthly payments to the plaintiff in the amount of $2000. The note also lists four properties that Kandu put up as collateral to secure the note,

---

[1] At various times in the record, the plaintiff's brother is referred to as both Najib Yousif and Najib Yusif. For clarity, we will use the spelling in the complaint.

including 1620 N. Naraganssett, Chicago, Illinois. The second note is signed only by Kandu. The plaintiff also attached a copy of a July 12, 2005 note executed by Kandu in favor of Yousif in the amount of $50,000 plus monthly interest of $350. The note also states that Kandu secured the note by putting up the property located at 5651 W. Huron, Chicago, Illinois, as collateral. Lastly, the plaintiff attached a typed January 18, 2010 letter, which states that it is a "confirmation between Najib Kandu and Najib Y[]usif" that the proceeds from the sale of two properties—1620 N. Naraganssett and 5651 W. Huron—will be used to "pay back all cashiers [*sic*] check back to both Mr. Najib Yousif and [the plaintiff] to satisfy all the past payment [*sic*]. With $500.00 payment per month." The letter is notarized and bears the signatures of both Kandu and Yousif. Additionally, there are handwritten notations, which, as best as this court can tell, state the following: "Approx. $(400,000) in total. According to this [indiscernible] I making [*sic*] payment $500/month. This money was used to purch. land in city of Zion." The handwritten notes are initialed "N.K."

¶ 6    On February 7, 2020, the defendants filed a joint motion to dismiss the plaintiff's complaint pursuant to section 2-619(a)(5) of the Code (735 ILCS 5/2-619(a)(5) (West 2018)), arguing that the plaintiff's claims were barred by the statute of limitations. Specifically, the defendants contend that, regardless of how the claims are styled, "it is clear that [the plaintiff] is merely seeking a breach of contract claim ***," and pursuant to section 13-206 of the Code (735 ILCS 5/13206 (West 2018)), such claims must be brought within ten years of the cause of action arising. According to the defendants, the plaintiff's complaint alleged that the breach of contract occurred no later than 2005, whereas his complaint was filed on October 11, 2019, which is beyond the ten-

year statute of limitations. Lastly, the defendants argued that the complaint failed to allege how Shamoun, Kandu's wife, would be liable for any of Kandu's debts.

¶ 7    The plaintiff filed a response to the defendants' motion to dismiss, arguing that the January 18, 2010 letter represented a "new promise to pay" pursuant to section 13-206 of the Code, which renewed the debt and reset the clock for the purpose of the statute of limitations. The plaintiff argued that, as a result, his complaint filed on October 11, 2019, was not time-barred.

¶ 8    On May 22, 2020, the circuit court entered a written order granting the defendants' motion to dismiss the plaintiff's complaint, finding that his claims were barred by the statute of limitations. In reaching this decision, the court found that the plaintiff's claims all stem from the breach of the two notes which occurred more than ten years before the plaintiff filed his complaint. The court rejected the plaintiff's argument that the January 18, 2010 letter represented a new promise to pay by Kandu. The court noted that the plaintiff was not a signatory to the letter and that the letter stated it was an agreement between Kandu and a nonparty, Yusif. The court also noted that the letter did not specify "what alleged debt is owed to [the] plaintiff."

¶ 9    On June 9, 2020, the plaintiff filed a motion asking the circuit court to reconsider its dismissal of his complaint, arguing that the court made an error in its application of existing law when it determined that the January 18, 2010 letter was not a new promise by Kandu to pay the plaintiff. According to the plaintiff, the fact that he was not a signatory to the letter does not negate the fact that Kandu made an explicit promise to use the proceeds of certain real estate transactions "to satisfy all the past payment" from both himself and Yusif. The plaintiff also challenges the court's finding that the letter was not sufficiently specific, arguing that the terms of the letter are clear: Kandu would sell two pieces of property and use the proceeds to pay back the nearly

$400,000 he borrowed from the plaintiff and Yusif in $500 per month installments. The defendants filed a response, arguing that the circuit court correctly applied the law when it determined that the unrelated agreement between Kandu and Yusif did not represent a new promise to repay the 2003 and 2004 notes executed in favor of the plaintiff. The circuit court denied the plaintiff's motion to reconsider on July 27, 2020. This appeal followed.

¶ 10    On appeal, the plaintiff argues that the circuit court erred when it granted the defendant's motion to dismiss under section 2-619 of the Code on the grounds that his claims were barred by the ten-year statute of limitations. Specifically, he challenges the circuit court's finding that Kandu did not renew his promise to pay the debts in a January 18, 2010 letter and reset the statute of limitations.

¶ 11    At the outset, we note that the defendants did not file a brief with this court. However, this court, on its own motion, ordered the case taken on the appellant's brief only. See *In re Marriage of Tomlins & Glenn*, 2013 IL App (3d) 120099, ¶ 18 (explaining that when the record is simple and the allegations of error can be easily decided without the aid of the appellee's brief, this court will consider the appeal) (citing *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976)).

¶ 12    A section 2-619 motion to dismiss "admits the legal sufficiency of the complaint, but raises defects, defenses, or other affirmative matters appearing on the face of the complaint or established by external submissions, which defeat the action." *Nourse v. City of Chicago*, 2017 IL App (1st) 160664, ¶ 14. "In deciding a section 2-619 motion, a court accepts all well-pleaded facts and their inferences as true and construes all pleadings and supporting documents in favor of the non-moving party." *Estate of Alford v. Shelton*, 2017 IL 121199, ¶ 21. The issue on appeal is "whether

the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993). Our review is *de novo. Bjork v. O'Meara*, 2013 IL 114044, ¶ 21.

¶ 13    Here, the defendants argued that the plaintiff's complaint should be dismissed pursuant to section 2-619(a)(5) of the Code because his claims were barred by the ten-year statute of limitations. Section 2-619(a)(5) of the Code allows for the involuntary dismissal of an action that "was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2018). Whether a cause of action has been properly dismissed under section 2-619(a)(5) of the Code on the statute of limitations grounds presents a matter we review *de novo. Ferguson v. City of Chicago*, 213 Ill. 2d 94, 99 (2004).

¶ 14    Section 13-206 of the Code provides that

> "actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing *** shall be commenced within 10 years next after the cause of action accrued; but if any payment or new promise to pay has been made, in writing, on any bond, note, bill, lease, contract, or other written evidence of indebtedness, within or after the period of 10 years, then an action may be commenced thereon at any time within 10 years after the time of such payment or promise to pay. 735 ILCS 5/13-206 (West 2018).

¶ 15    The circuit court found, and the plaintiff does not dispute, that the three claims in his October 11, 2019 complaint fall into the category of actions governed by section 13-206 of the Code, nor does he dispute that his complaint was filed more than ten years after Kandu failed to

make payments on the 2003 and 2004 notes. Rather, he argues that the January 18, 2010 letter signed by Kandu was a "new promise to pay" as described in section 13-206 of the Code, and therefore, the statute of limitations was reset. Thus, the question we must answer on review is whether the January 10, 18, 2010 letter represents a new promise by Kandu to pay back the debt he owed to the plaintiff. We conclude that it does.

¶ 16    Black's legal dictionary defines a new promise as "[a]n undertaking or promise, based upon and having relation to a former promise which, for some reason, can no longer be enforced, whereby the promisor recognizes and revives such former promise and engages to fulfill it." Black's Law Dictionary 1213 (6th ed. 1990). The Restatement (Second) of Contracts defines a promise as "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." Restatement (Second) of Contracts § 2 (1981).

¶ 17    Here, the January 18, 2010 letter states that Kandu would use the proceeds from the sale of the properties located at 5651 W. Huron and 1620 N. Narragansett "to pay back all cashiers [*sic*] check" to Yousif and the plaintiff "to satisfy all the past payment." By the plain language of the letter, Kandu acknowledges a debt to the plaintiff and states his intent to repay that debt. In other words, Kandu recognized and revived his former promise to the plaintiff and engaged to fulfill it. The court below found it "problematic" for the plaintiff that he was not a signatory to that letter; however, the lack of the plaintiff's signature does not alter the plain meaning of the letter's contents. The dispositive question is whether Kandu manifested his intent to honor his prior promise in such a way as to justify the plaintiff in understanding that a commitment had been made. We find that he did. Kandu put in writing an acknowledgment that he owed the plaintiff a

debt and that he intended to pay that debt, and the plaintiff was justified in understanding that written promise to be a commitment to repay him.

¶ 18    We conclude also that the January 18, 2010 letter sufficiently specified the debt owed to the plaintiff. In finding otherwise, the circuit court cited to *Boatmen's Bank of Mt. Vernon v. Dowell*, 208 Ill. App, 3d 994 (1991). Specifically, the circuit court cited the following passage: "It has been said that if the debt be identified with such certainty as will clearly determine its character, and show a present, unqualified willingness and intention to pay, that is sufficient to constitute the new promise." (Internal quotation marks omitted.) *Dowell*, 208 Ill. App. 3d at 1002-03. According to the court below, the January 18, 2010 letter was not specific enough to constitute a new promise. We disagree and find *Dowell* supports our conclusion.

¶ 19    In *Dowell*, the plaintiff-bank loaned money to the defendant's husband, and the defendant signed a document in which she guaranteed prompt repayment of the debt when due. *Id.* at 997. Over the course of ten years, the plaintiff made three separate loans to the defendant's husband. *Id.* When one of the loans came due ten years after first guaranty was signed, the plaintiff provided the defendant's husband a renewal on that loan for six months, but it asked the defendant to sign a second guaranty in return. *Id.* at 998. The defendant signed a second guaranty, which stated the following: "[the defendant] does hereby guarantee the full and prompt payment to [the plaintiff] of all indebtedness, obligations and liabilities of [the defendant's husband] to [the plaintiff] now existing or hereafter created or arising." The defendant's husband died with outstanding debts to the plaintiff, including debts that existed prior to the signing of the second guaranty, and the plaintiff filed a complaint seeking recovery from the defendant. *Id.* at 1001. The circuit court found that the second guaranty was a new promise under section 13-206 of the Code and entered

judgment in favor of the plaintiff. *Id.* The defendant appealed, and the appellate court affirmed, finding that, even though the second guaranty "does not specifically refer to the first, *** the general language adequately apprised [the] defendant that she was renewing her obligation to guarantee, without exception, the debts of her husband as she first promised ***." *Id.* at 1003. The court also concluded that the "sweeping language" in the second guaranty signed by the defendant was "an unequivocal and sufficiently clear promise" to pay the debts she agreed to pay in the first guaranty. *Id.*

¶ 20    Here, like in *Dowell*, the January 18, 2010 letter also uses sweeping language, as Kandu committed to using the proceeds gained from selling two properties, including 1620 N. Narragansett, "to satisfy all past payment" made by the plaintiff and Yusif. We also find it significant that, although there is not an explicit reference in the letter to the prior two notes Kandu executed in favor of the plaintiff, one of the properties that Kandu agreed to sell in the January 18, 2010 letter, 1620 N. Narragansett, is also one of the properties Kandu offered up as collateral to secure the May 11, 2004 note. Moreover, the handwritten notes that appear on the letter, which are initialed "N.K.," indicate that the amount owed to the plaintiff and Yousif is $400,000 and that the money was used to purchase property in Zion, Illinois. This description of the debt and the purpose is consistent with the allegations in the plaintiff's complaint that he loaned approximately $230,000 to Kandu that Kandu was to use to purchase investment properties. When reviewing a circuit court's grant of a section 2-619 motion to dismiss, we must interpret all pleadings and supporting documents in the light most favorable to the plaintiff. Viewed through that lens, we find that the January 18, 2010 letter sufficiently specified the debt Kandu owed to the plaintiff.

Accordingly, we find that the circuit court erred when it dismissed the plaintiff's complaint on the grounds that his claims were barred by the statute of limitations.

¶ 21 For the foregoing reasons, we reverse the decision of the circuit court of Cook County and remand the matter for further proceedings.

¶ 22 Reversed and remanded.